UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALONA BROWN,** | No. |
| Plaintiff, | |
| v., | |
| **JET MOTOR SPORTS, INC.** t/a **IMPORTS AUTO DIRECT** & **WESTLAKE SERVICES, LLC**. d/b/a **WESTLAKE FINANCIAL SERVICES,** | **PLAINTIFF DEMANDS A TRIAL BY JURY** |
| Defendants. | |

### Complaint

Alona Brown files this complaint against Jet Motor Sports, Inc., and Westlake Services, LLC., for violation of the Truth In Lending Act, unfair debt collection practices, breach of warranty, other claims, and avers:

1. Alona Brown is an individual with a residence at 8019 Chelwynde Ave. Phila., PA 19153.

2. Jet Motor Sports, Inc. ("Jet"), is a used car dealership with a location at or about 4320 Torresdale Ave., Phila., PA 19124.

3. Westlake Services, LLC.  t/a Westlake Financial Services ("Westlake"), is a finance company that purportedly took assignment of an alleged installment sale agreement between Ms. Brown and Jet. All references to Jet in this complaint include Westlake.

1

4.  Federal jurisdiction for this complaint arises under the Truth in Lending Act, 15 U.S.C. 1640.

5.  All of the events described in this complaint took place in the Eastern District of Pennsylvania.

6. In March 2025, Ms. Brown was looking to purchase a car for personal use.

7. She found Jet through promotional posts on Instagram.

8. On or about March 29, 2025, Ms. Brown went to Jet to look at the cars they had for sale.

9. She arrived at Jet late in the afternoon near closing.

10. At Jet, Ms. Brown saw a 2015 Jeep Cherokee, VIN 1C4PJMCSXFW587376 (the "Vehicle"), which she decided to purchase.

11. She spoke to a salesman named Chuck Nel.

12. Mr. Nel represented to Ms. Brown that the vehicle would be reliable transportation for her and her kids.

13. Ms. Brown relied on the representation when she decided to purchase the car.

14. Jet offered the car for sale at $9,000.

15. Ms. Brown put down a deposit of $6,000 and intended to finance the balance.

16. After deciding to purchase the car, Ms. Brown met in an office with a finance manager believed to be Andrew Broadnax to close the sale.

2

17. Mr. Broadnax sat at a desk facing a computer.

18. Ms. Brown sat across from Mr. Broadnax on the other side of the desk.

19. The computer had a single screen, which faced Mr. Braodnax.

20. The computer screen was not visible to Ms. Brown.

21. Mr. Broadnax sat at the desk and operated the computer.

22. While on the computer, Mr. Broadnax apparently drafted the documentation for the sale, including an installment sale contract.

23. The installment sale agreement was drafted on forms provided by the proposed assignee, the defendant Westlake.

24. While drafting the installment sale agreement, Mr. Broadnax verbally described some of the terms and conditions to Ms. Brown.

25. Mr. Broadnax did not turn around the computer screen for Ms. Brown to view.

26. Mr. Broadnax did not hand over operation of the computer at any time so that Ms. Brown could scroll through any images of the installment sale agreement to read the terms and conditions herself.

27. Ms. Brown was not shown the Truth in Lending disclosures on the face of the installment sale agreement.

28. At no time was Ms. Brown given control of the computer, mouse, keyboard, stylus, or any other electronic instrumentality to input her acceptance of

3

the terms and conditions on the installment sale agreement or any other document produced on the computer at the time of the sale.

29. After Ms. Brown paid $6,000, and Mr. Broadnax finished on the computer, Mr. Broadnax printed out a set of documents and gave them to Ms. Brown.

30. The documents included a hard copy of the an installment sale agreement, a copy of which is attached hereto as Exhibit P-1.

31. The installment sale agreement contained four signature lines requiring Ms. Brown's signature.

32. Each of these signature lines contained a computer generated signature printed in a cursive font spelling out Ms. Browns name, all bearing the identical time stamp of "Mar 29, 5:22:07 PM PDT." Exhibit P-1.



33. Whatever action was necessary to make the symbol of Ms. Brown's signature appear on the contract was performed by Mr. Broadnax, and not by Mr. Brown, since she was never given control of the computer.

34. Mr. Broadnax, in effect, signed the installment sale agreement for Ms. Brown.

35. Mr. Broadnax did not have authority to sign the installment sale agreement for Ms. Brown.

36. Since all four of Ms. Brown's signatures on the contract contain the identical time stamp down to the second, Mr. Broadnax was able to insert all four signatures simultaneously with a single click.

37. Ms. Brown left the dealer with the Vehicle and a copy of the paperwork.

38. This was the first time Ms. Brown was able to see the Truth-In-Lending disclosures.

39. According to the itemization of the amount financed on page two of the installment sale agreement, Ms. Brown purchased the vehicle for $9,880 including sale's tax.

40. Ms. Brown made a $6,000 down payment, which brought the balance down to $3,880, but then Jet increased the balance by adding $2,000 for a service contract, $445 for GAP insurance, and $422 for document preparation.

41. Ms. Brown never agreed to these charges and did not see them until after the transaction when she reviewed the installment sale agreement.

42. These additional charges increased the amount financed from $3,880.00 to $6,928.00.

43. After the purchase, the car failed to be reliable as represented by Mr. Nel.

44. Within a few weeks of the purchase, the vehicle broke down twice while Ms. Brown was driving.

45. The first breakdown occurred on April 27, 2025.

46. Various warning lights came on and the car stalled out.

47. Ms. Brown called AAA and got the car towed.

48. The second breakdown occurred on May 22, 2025.

49. The car again stalled while being driven.

50. Ms. Brown called AAA to have the car towed.

51. Ms. Brown contacted Jet who told her they could fix the car.

52. Ms. Brown had the car towed to Jet.

53. Once at Jet, Ms. Brown again spoke to Mr. Broadnax.

54. She informed him the car was not working and needed to be repaired.

55. Ms. Broadnax represented to Ms. Brown that Jet would repair the car and asked for the keys.

56. Based on this representation, Ms. Brown handed Mr. Broadnax the keys.

57. At that point, Mr. Broadnax's demeanor changed. He told Ms. Brown that Jet was taking back the car from her, alleging that Ms. Brown was late on her first payment.

58. Ms. Brown never got the car back, never received any further communication concerning the car from either Jet or Lakeview, and never got back any of her $6,000 down payment.

### Count I

59. This count is against Jet and Westlake for violation of the Truth-In-Lending Act, 15 U.S.C. §§ 1601 *et seq*. All of the preceding paragraphs are incorporated by reference.

60. Jet failed to show Ms. Brown the material Truth-In-Lending disclosures before inserting her signature on the contract.

61. Ms. Brown never saw the A.P.R., finance charge, amount financed, total payments, total sale price, or the itemization of the amount financed before her electronic signature was affixed to the loan agreement by Mr. Broadnax.

62. Without giving Ms. Brown control over the computer to review the contract herself, Ms. Brown had no meaningful opportunity to view the Truth in Lending disclosures and no reasonable notice of the terms and conditions of the loan.

63. Without being able to see the itemization of the amount financed, Ms. Brown was not able to see that Jet included a service contract and GAP contract in the sale.

64. Jet did not accurately calculate the finance charge.

65. Jet involuntarily included a service contract and GAP protection in the loan as an incident to the extension of credit.

66. Ms. Brown did not want a service contract and GAP protection, but Jet did not give her a choice or show her any disclosure stating that the purchase was voluntary. Exhibit P-1.

67. The cost of the service contract and GAP protection should have been included in the finance charge, rather than the amount financed, since Jet involuntarily included these products in the loan.

WHEREFORE, Ms. Brown asks for an award of actual damages, statutory damages, consequential and incidental damages, and all attorney's fees and costs, jointly and severally, against all defendants, plus any other relief that is just and appropriate, including but not limited to a declaration that she is no longer liable on the installment sale agreement.

## Count II

68. This count is against Jet and Westlake for engaging in unfair and deceptive acts and practices in violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § § 201-3. All of the preceding paragraphs are incorporated by reference.

69. The Unfair Trade Practices and Consumer Protection Law ("UTPCPL") renders it unlawful for any person engaging in a trade or business to commit unfair or deceptive acts and practices as defined at 73 P.S. § 201-2(4).

70. The defendants are persons engaging in a trade or business within the meaning of the UTPCPL.

71. Jet engaged in unfair and deceptive acts, including, but not limited to:

(a).   Forging Ms. Brown's electronic signature on the loan agreement and then representing that Ms. Brown was bound by an agreement she never signed;

(b).   Representing to Ms. Brown that she was bound by an agreement she never saw and did not sign;

(c).   Representing to Ms. Brown that she is liable for a finance charge of $3,088.16 that she never agreed to pay;

(d).   Including the purchase of a service contract and GAP protection policy in the loan without Ms. Brown's knowledge or consent;

(e). Representing that the vehicle was roadworthy when it was not, in violation of 37 Pa. Code §§ 301.2(5) & 301.2(6);

(f). Representing that the vehicle was roadworthy without a sufficient factual basis in violation of 37 Pa. Code § 301.2(6);

(g). Passing off the Vehicle as if it was in good condition and repair when it was defective and in need of repair and reconditioning;

(h). Refusing to acknowledge responsibility to repair the vehicle or rescind the transaction pursuant to the implied warranties of merchantability and fitness for a particular purpose or Mr. Nel's express warranty that the Vehicle was reliable.

72. Ms. Brown was damaged by Jet's conduct. She lost a $6,000 deposit on a defective car, and she is being charged for a service contract and GAP contract she did not agree to purchase.

WHEREFORE, Ms. Brown asks for an award of actual damages, statutory damages, consequential and incidental damages, and all attorney's fees and costs, jointly and severally, against all defendants, plus any other relief that is just and appropriate, including but not limited to a declaration that she is no longer liable on the installment sale agreement.

## Count III

73. This count is against Jet and Westlake for violation of the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 P.S. § 2270.4. All of the preceding paragraphs are incorporated by reference.

74. Ms. Brown is a consumer under the FCEUA. 73 P.S. § 2270.3. Ms. Brown is a consumer who is alleged to have incurred a debt in Pennsylvania.

75. Jet is a creditor under the FCEUA. 73 P.S. § 2270.3. Jet is a business to whom a debt is owed or alleged to be owed.

76. Westlake is a creditor under the FCEUA. 73 P.S. § 2270.3. Jet is a business to whom a debt is owed or alleged to be owed.

77. Ms. Brown's financial obligation under the installment sale agreement is a debt within the meaning of the FCEUA. 73 P.S. § 2270.3. The debt is an obligation alleged to be passed due resulting from a transaction that was primarily for personal, family, or household purposes.

78. Jet violated the FCEUA by engaging in unfair or unconscionable collection practices in violation of 73 P.S. § 2270.4(b)(6)(vi), including:

10

(a). Taking possession of Ms. Brown's vehicle in the absence of a present right to possession under an enforceable security agreement;

(i). In the absence of a signed loan agreement, Jet had no enforceable security interest in the Vehicle;

(b). Representing to Ms. Brown that she was behind on payments in the absence of a signed loan agreement; and

(c). Deceiving Ms. Brown into giving up possession of the keys to the Vehicle by falsely representing that Jet would fix the car.

WHEREFORE, Ms. Brown asks for an award of actual damages, statutory damages, consequential and incidental damages, and all attorney's fees and costs, jointly and severally, against all defendants, plus any other relief that is just and appropriate, including but not limited to a declaration that she is no longer liable on the installment sale agreement.

### Count IV

79. This count is against Jet and Westlake under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310(d), and state law for breach of warranty. All of the preceding paragraphs are incorporated by reference.

80. At the time of sale, the Vehicle was subject to an implied warranty of merchantability as well as the dealer's express warranty that the Vehicle was reliable.

81. In reality, the vehicle suffered from a defect that caused it to periodically stall out in traffic and prevented it from being reliable.

11

82.  Ms. Brown asked Jet to repair the Vehicle, but instead of repairing the Vehicle, Jet took the Vehicle from her.

83. The failure to repair the vehicle was a violation of the implied warranty of merchantability as well as the salesman's express warranty that the Vehicle was reliable.

84.  Jet's violation of implied and express warranties is actionable as a violation of state law and the MMWA,15 U.S.C. § 2310(d).

85. As a result of the breach, Ms. Brown was damaged by the loss of her $6,000 deposit and continuing liability on the installment sale agreement.

WHEREFORE, Ms. Brown asks for an award of actual damages, statutory damages, consequential and incidental damages, and all attorney's fees and costs, jointly and severally, against all defendants, plus any other relief that is just and appropriate, including but not limited to a declaration that she is no longer liable on the installment sale agreement.

### Count V

86.  This count is against Jet and Westlake for violation of the Pennsylvania Commercial Code, 13 Pa.C.S. § 9625. All of the preceding paragraphs are incorporated by reference.

87. Defendants violated Article 9 of the Pennsylvania Commercial Code by:

(a).  Repossession Ms. Brown's car in the absence of a signed security agreement;

12

(b). Failing to give notice to Ms. Brown of her redemption rights following the repossession; and

(c). Failing to dispose of the Vehicle in accordance with the Commercial Code or otherwise in a commercially reasonable manner.

WHEREFORE, Ms. Brown asks for an award of actual damages, statutory damages, consequential and incidental damages, and all attorney's fees and costs, jointly and severally, against all defendants, plus any other relief that is just and appropriate, including but not limited to a declaration that she is no longer liable on the installment sale agreement.

Respectfully submitted,

_____
Robert F. Salvin (RFS2522)
Two Bala Plaza, Suite 300
Bala Cynwyd, PA  19004
215-300-2388
215-271-2820 (fax)
robert.salvin@outlook.com

13