**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ALONA BROWN, *Plaintiff,* v. JET MOTOR SPORTS, INC. t/a IMPORTS AUTO DIRECT & WESTLAKE SERVICES, LLC. d/b/a/ WESTLAKE FINANCIAL SERVICES, *Defendants.* | : | CIVIL ACTION 2:25-cv-06617-GAW |

**MEMORANDUM OPINION**

This case arises from a motor vehicle purchase. Plaintiff Alona Brown alleges that Jet Motor Sports, Inc. t/a Imports Auto Direct ("Jet") engaged in deceptive sales practices when it sold her a vehicle, allegedly violating, *inter alia*, the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d). Plaintiff seeks to hold Westlake Financial Services ("Westlake") liable for Jet's alleged misconduct based on Westlake's purported status as an assignee of the installment sale agreement underlying this dispute. There is, however, a fundamental problem with Plaintiff's theory of liability: Plaintiff insists that she neither signed the installment sale agreement nor authorized Jet's representative to sign it on her behalf. In other words, Plaintiff seeks to impose liability on Westlake based on its alleged assignment of an agreement that, by Plaintiff's own account, she never executed or authorized. Thus, Plaintiff has no basis to hold Westlake liable as an assignee. Accordingly, for the reasons that follow, the

Court will *sua sponte* dismiss Plaintiff's claims against Westlake. Westlake's pending Motion to Compel Arbitration (Dkt. No. 16) is dismissed as moot.

## I. Factual Background

On or about March 29, 2025, Plaintiff went to Defendant Jet Motor Sports, Inc. ("Jet"), a car dealership in Philadelphia, to purchase a vehicle. Complaint (Dkt. No. 1) at ¶ 6. At Jet, Plaintiff decided to purchase a 2015 Jeep Cherokee, VIN 1C4PJMCSXFW587376 (the "Vehicle"). *Id.* at ¶ 10. Jet offered to sell Plaintiff the car for $9,000. *Id.* at ¶ 14. Plaintiff decided to purchase the car and met with Andrew Broadnax, the finance manager at Jet. *Id.* at ¶ 16.

Once Plaintiff was in Mr. Broadnax's office, Mr. Broadnax drafted the documentation for the sale, including an installment sale contract. *Id.* at ¶ 22. Plaintiff alleged that Mr. Broadnax drafted the installment agreement using forms provided by Defendant Westlake, the "proposed assignee." *Id.* at ¶ 23.

Relevant to this dispute, the installment sale agreement contained an arbitration provision that provided in relevant part:

> CAUTION: It is important that you read this Arbitration Provision thoroughly before you sign this Contract. By signing this Contract, you acknowledge that you read, understand and agree to this Arbitration Provision . . . If you approve this Arbitration Provision, you have an additional 30 days after signing to reconsider and reject your approval, as described above. If you use that process to reject, this Arbitration Provision will not be part of this Contract, but the rest of this Contract will still be binding.

Exhibit A to Complaint (Dkt. No. 1-1) at 5.

> This Contract contains an Arbitration Provision that affects your rights. By signing this Contract, you agree that

> either of us may request and require the other to resolve disputes or claims through arbitration instead of a lawsuit. The Arbitration Provision includes a process you can follow in the next 30 days if you reconsider and want to reject the Arbitration Provision.

*Id.* at 6.

The installment sale agreement also contained a "Holder Provision" that provided:

> NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

Exhibit A to Complaint (Dkt. No. 1-1) at 5.

While drafting the installment agreement, Mr. Broadnax verbally described some of the terms and conditions to Plaintiff. *Id.* at ¶ 24. However, Plaintiff alleged that she was never permitted to view the installment sale agreement. *Id.* at ¶ 25. Specifically, Plaintiff alleges that she sat opposite Mr. Broadnax during the transaction and that he alone operated the computer on the desk in front of him. *Id.* at ¶¶ 18–22, 25.

Once Plaintiff paid the $6,000 deposit for the car, Mr. Broadnax printed out a set of documents, including the installment sale agreement. *Id.* at ¶¶ 29–30. The installment sale agreement contained four computer-generated signatures bearing Plaintiff's name, each with the identical timestamp: Mar. 29, 5:22:07 p.m. PDT. *Id.* at ¶¶ 31–32. Because all four of Plaintiff's signatures bore the identical time stamp,

Plaintiff alleges that Mr. Broadnax was able to insert all of them simultaneously with a single click. *Id.* at ¶ 36.

Plaintiff alleges that Mr. Broadnax effectively signed the installment sale agreement on her behalf without her permission. *Id.* at ¶¶ 34–35. Plaintiff alleges that Mr. Broadnax never relinquished control of the computer, preventing her from scrolling through and reading the terms and conditions, including the Truth in Lending disclosures. *Id.* at ¶¶ 26–27. Plaintiff further alleges that she was never given control of the computer, mouse or keyboard to accept the terms and conditions on the installment sale agreement or any other document produced on the computer at the time of sale. *Id.* at ¶ 28.

Plaintiff contends that she did not see the Truth in Lending disclosures until after she left with the vehicle. *Id.* at ¶ 38. Further, Plaintiff alleges that Jet added approximately $3,000 in various fees and insurance costs without Plaintiff's consent, increasing the amount financed from $3,880.00 to $6,928.00. *Id.* at ¶¶ 39–42.

Plaintiff alleges that the purchased vehicle did not perform as warranted. *Id.* at ¶¶ 71, 79–85. The vehicle allegedly broke down multiple times, causing Plaintiff to contact Jet about the issue. *Id.* at ¶¶ 44–55. Plaintiff had the vehicle towed to Jet under the impression that Jet would repair the car. *Id.* at ¶¶ 51–54. Plaintiff alleges, however, that after she gave Mr. Broadnax the car keys, Mr. Broadnax told Plaintiff that Jet was repossessing the car due to late payment. *Id.* at ¶¶ 56–57.

## II. Procedural History

On November 21, 2025, Plaintiff sued the Defendants, alleging that they, *inter alia*, violated the Truth-In-Lending Act, 15 U.S.C. § 1601 et seq., the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-3, and the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d). On March 11, 2026, the Clerk of Court entered default against Jet due to its failure to defend. *See* Entry of Default (Dkt. No. 13).

Pursuant to an Order from the Court, the parties engaged in limited discovery on the issue of whether the arbitration provision in the installment sale agreement was enforceable. *See* May 11, 2026 Order (Dkt. No. 15). On July 10, 2026, Defendant Westlake moved to stay the proceedings and compel arbitration. *See* Defendant's Motion to Compel Arbitration (Dkt. No. 16). After Plaintiff responded (Dkt. No. 17), counsel participated in oral argument on September 22, 2026. In the weeks that followed, the parties submitted supplemental briefing on the issue. *See* Plaintiff's Motion for Leave to File Supplemental Memorandum of Law (Dkt. No. 20); Response to Plaintiff's Supplemental Memorandum of Law (Dkt. No. 24).

## III. Legal Analysis

Although *sua sponte* dismissal of a claim is generally disfavored, a district court may dismiss a claim on its own initiative if the basis for dismissal is apparent from the face of the complaint. *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002). As with any motion to dismiss, the Court must accept the plaintiff's allegations as true and may only dismiss the claim if the plaintiff is unable to state a claim upon which relief may be granted. *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d

Cir.1980); *Pa. State Troopers Assn. v. Pennsylvania*, No. 06–1079, 2007 WL 853958, at *9 (M.D. Pa. Mar. 20, 2007) (explaining that if a complaint is "baldly inadequate as a matter of law, the court may, on its own motion, dismiss the complaint or a claim cited therein.") "When appropriate, *sua sponte* dismissal promotes the prompt and efficient disposition of cases and protects valuable judicial resources by expediting the dismissal of cases that lack 'a shred of a valid claim.'" *Pa. State Troopers Assn.*, 2007 WL 853958, at *9 (quoting *Baker v. Dir. U.S. Parole Comm'n*, 916 F.2d 725, 726 (D.C. Cir.1990)). When a district court considers *sua sponte* dismissal under Rule 12(b)(6) after service of process, the plaintiff generally must be afforded notice and an opportunity to respond. *Bethea v. Nation of Islam*, 248 F. App'x 331, 333 (3d Cir. 2007); *Yoast v. Pottstown Borough*, 437 F. Supp. 3d 403, 434 (E.D. Pa. 2020), *aff'd*, No. 22-1960, 2023 WL 4418213 (3d Cir. July 10, 2023).

As explained below, *sua sponte* dismissal is appropriate here because (1) Plaintiff received notice of the deficiency and had an opportunity to respond; (2) even when accepted as true, Plaintiff's allegations do not support a claim upon which relief may be granted; and (3) amending the Complaint would be futile.

### A. Plaintiff had Notice of the Deficiency and an Opportunity to Respond

Here, Plaintiff received notice of, and had a meaningful opportunity to respond to, the precise issue underlying the Court's decision. In its Motion to Stay and Compel Arbitration (Dkt. No. 16), Westlake argued that Plaintiff could not simultaneously rely on the Holder Provision in the installment sale agreement to impose liability on Westlake while maintaining that her signature on the agreement was essentially

forged and the arbitration provision was unenforceable. Westlake's Memorandum in Support of Motion to Stay and Compel Arbitration (Dkt. No. 16-1) at 4.[1] Specifically, Westlake argued that, if no contract existed, the Holder Rule did not apply, and Plaintiff had no basis to assert claims against Westlake as an assignee. *Id.*

Plaintiff squarely addressed that argument in her opposition. *See* Plaintiff's Memorandum in Opposition (Dkt. No. 17-1) at 9–10. Specifically, Plaintiff argued that the Holder Rule permits a consumer to assert claims and defenses against an assignee even where the underlying contract was not validly executed. *Id.* Plaintiff addressed the issue again at oral argument. *See, e.g.*, Oral Argument Transcript (Dkt. No. 21) at 9:14–11:6. Moreover, the Court granted Plaintiff leave to file a supplemental brief, in which Plaintiff further developed her argument. *See* Plaintiff's Supplemental Memorandum (Dkt. No. 20-1) at 5–6.

Accordingly, Plaintiff had notice of the basis for the Court's dismissal and ample opportunity to address that issue. The Court turns next to whether, accepting Plaintiff's allegations as true, those claims may proceed.

**B. Plaintiff Fails to State a Claim for Which Relief can be Granted**

The Complaint does not provide a basis for imposing liability on Westlake under the circumstances alleged. It is hornbook law that mutual assent between parties is necessary to form a contract. *See Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221 (3d Cir. 2008). Where a signature was forged, the agreement is void and does not create a contractual relationship with the purported signatory. *See*

[1] Page references refer to the internal page numbers of the document, not the page numbers generated by the ECF System.

*Marquess v. Pa. State Emps. Credit Union*, 427 F. Appx. 188, 189 (3d Cir. 2011); *Levin v. Transamerica Occidental Life Ins. Co.*, No. CIV. A. 05-5172, 2008 WL 3895897 at *4 n.1 (E.D. Pa. Aug. 21, 2008) ("In Pennsylvania, a document that is forged or made without authority of the individual, is inoperative." (*citing Johnson v. First Nat'l Bank of Beaver Falls*, 81 A.2d 95, 96 (Pa.1951))).

Here, Plaintiff alleges that Westlake is liable for her claims because Westlake took assignment of the installment sale agreement purportedly executed between Plaintiff and Jet. *See* Complaint (Dkt. No. 1) at ¶ 3. Indeed, the installment sale agreement specifically states that "any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller…." Exhibit A to Complaint (Dkt. No. 1-1) at 5 (emphasis added). Accordingly, Plaintiff's theory of liability against Westlake under the FTC Holder Rule necessarily depends upon Westlake's status as the holder of an assignable consumer credit contract.

Plaintiff alleges that she did not accept the terms and conditions of the installment sale agreement and that Mr. Broadnax electronically signed Plaintiff's name without permission. Complaint (Dkt. No. 1) at ¶¶ 26–28, 34–35. If those allegations are true, the installment sale agreement that Westlake purportedly acquired by assignment was void at the outset. *See Marquess*, 427 F. Appx. at 189; *Levin,* 2008 WL 3895897 at *4 n.1. Consequently, there was no enforceable contractual obligation between Plaintiff and Jet that could be assigned to Westlake.

Plaintiff argues that the FTC Holder Rule provision represents Westlake's agreement with Jet to assume liability for Plaintiff's claims and that agreement

remains enforceable between Jet and Westlake regardless of whether Plaintiff signed the installment sale agreement. *See* Plaintiff's Memorandum in Opposition (Dkt. No. 17-1) at 9. The Court disagrees. An agreement between Jet and Westlake to assign the installment sale agreement cannot transform an otherwise void instrument into an enforceable contract. *See Abira Med. Laboratories, LLC v. UPMC Health Plan Inc.*, No. 24-CV-0227, 2025 WL 3068734, at *7 (E.D. Pa. Nov. 3, 2025) (Kenney, J.) (explaining that an effective assignment requires an underlying valid contract capable of assignment).

The case *Beemus v. Interstate National Dealer Services, Inc.*, 823 A.2d 979 (Pa. Super. 2003), upon which Plaintiff relies, does not compel a different result. In *Beemus*, the Pennsylvania Superior Court addressed whether a consumer seeking affirmative recovery under the FTC Holder Rule was required to demonstrate a right to rescind the underlying transaction or that the consumer received little or nothing of value from the seller. *Id.* at 982–83. The court held that a consumer-debtor seeking affirmative recovery under the Holder Rule need not establish either circumstance. *Id.* at 984–86. In reaching that conclusion, the court explained that a consumer-debtor may assert against a creditor-assignee any affirmative claims for recovery, as well as defenses, that the consumer could have asserted against the seller had the contract not been assigned. *Id.* at 986.

Critically, however, the existence and assignment of the agreement in *Beemus* were undisputed. Thus, *Beemus* does not resolve the threshold question presented

here: whether an assignee may be held liable under the FTC Holder Rule where the purported consumer credit contract was void from its inception.

Because Plaintiff alleges that she never executed or authorized the installment sale agreement, the purported agreement was therefore incapable of being assigned to Westlake. Accordingly, Plaintiff has failed to allege a sufficient basis for imposing liability on Westlake under the FTC Holder Rule.

**C. Amending the Complaint Would be Futile**

Dismissal with prejudice may be warranted when amending the original complaint would be futile. *See Alston v. Parker*, 363 F.3d 229, 235–36 (3d Cir. 2004). Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Court recognizes that amendments should be liberally permitted under Fed. R. Civ. P. 15(a)(2) and that "[w]ithin limits, a plaintiff is permitted to make allegations in an amended complaint that contradict previous allegation[s], even where [it] is obvious that the changes were for the purpose of avoiding dismissal." *Scott v. Close,* No. 3:21-CV-46-SLH-KAP, 2021 WL 11699255, at *2 (W.D. Pa. Aug. 3, 2021), *report and recommendation adopted*, No. 3:21-CV-46, 2022 WL 20563935 (W.D. Pa. Apr. 21, 2022) (*citing West Run Student Housing Assoc., LLC v. Huntington National Bank*, 712 F.3d 165, 171-73 (3d Cir. 2013)). However, the Court must ensure that amendments comport with the principles of merit and good faith. Where an amended complaint makes a 180-degree reversal of previous allegations or attempts to avoid defects set forth in a prior complaint by omitting them without explanation, the Court may deny leave to amend and dismiss with prejudice. *See id.*

(*citing Bradley v. Chiron Corp.*, 136 F.3d 1317, 1324–25 (Fed. Cir. 1998)); *Dally v. Transunion LLC*, 840 F. Supp. 3d 411, 422 (E.D. Pa. 2026) (Weilheimer, J.) (dismissing the complaint with prejudice because amendment would be futile, as the plaintiff would have to fundamentally alter the facts to which she has already admitted to state a viable claim.).

Here, amending the original Complaint would be futile because Plaintiff would have to assert allegations in an amended Complaint that directly and fundamentally contradict those in her original Complaint. Permitting such an amendment would encourage the parties to be less candid with the court. *See* Pa. R. P. C. § 3.3 and Fed. R. Civ. P. 11. Accordingly, amending the Complaint would not comport with the principles of merit and good faith and would be futile.

## IV. Conclusion

For the reasons explained above, all claims against Westlake are dismissed. Westlake's pending Motion to Compel Arbitration (Dkt. No. 16) is dismissed as moot. An appropriate order follows.

DATED: 11/19/2026

BY THE COURT:

GAIL A. WEILHEIMER, J.